# UNITED STATES BANKRUPTCY COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | |
|---|---|
| In re: ) | |
| ) | CHAPTER 11 |
| **EAT HERE BRANDS, LLC, et al.**[1] ) | |
| ) | Lead Case No.: 19-61688-WLH |
| **Debtors.** ) | |
| ) | (Jointly Administered) |

### LIMITED OBJECTION TO DEBTORS' MOTION FOR ENTRY OF AN ORDER (I) ESTABLISHING A PROCEDURE FOR DETERMINING CLAIMS ARISING UNDER THE PERISHABLE AGRICULTURAL COMMODITIES ACT; (II) AUTHORIZING THE DEBTORS TO PAY CERTAIN PRE-PETITION CLAIMS ARISING UNDER THE PERISHABLE AGRICULTURAL COMMODITIES ACT; AND (III) GRANTING RELATED RELIEF

COME NOW FreshPoint Atlanta, Inc. ("**FreshPoint Atlanta**"), FreshPoint North Carolina, Inc. t/a FreshPoint Raleigh and t/a FreshPoint Nashville, Inc. ("**FreshPoint North Carolina**") and Creation Gardens, Inc. ("**Creation**") (FreshPoint Atlanta, FreshPoint Nashville, and Creation are the "**PACA Creditors**"), by and through undersigned counsel, and file this limited objection to the *Debtors' Motion for Entry of an Order (I) Establishing a Procedure for Determining Claims Arising Under the Perishable Agricultural Commodities Act; (II) Authorizing the Debtors to Pay Certain Pre-Petition Claims Arising Under the Perishable Agricultural Commodities Act; and (III) Granting Related Relief* (the "**PACA Motion**") [Docket No. 58] filed by Debtors Eat Here Brands, LLC ("**Eat Here**"), Babalu Atlanta #1 LLC, Babalu Atlanta #2 LLC, Babalu Knoxville #1, LLC, Babalu Memphis #1, LLC, Babalu Memphis #2 LLC, Babalu, LLC,

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Eat Here Brands, LLC (9694); Babalu Atlanta #1 LLC (4025); Babalu Atlanta #2 LLC (5240); Babalu Knoxville #1 LLC (3163); Babalu Memphis #1 LLC (9320); Babalu Memphis #2 LLC (4558); Babalu, LLC (7673); and Babalu Birmingham #1 LLC (1892). The Debtors' mailing address is 9755 Dogwood Road, Suite 200, Roswell, Georgia 30075.

- 1 -

and Babalu Birmingham #1, LLC (collectively, "**Debtors**"). In support of their limited objection, PACA Creditors respectfully submit the following:

## I. FACTUAL BACKGROUND

1. Debtors filed their voluntary petition for relief under Chapter 11 of the Bankruptcy Code on July 30, 2019 (the "**Petition Date**").

2. Debtors are continuing in possession of their business and property as debtors-in-possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code.

3. Debtors are purchasers of wholesale quantities of produce subject to licensure under the provisions of the Perishable Agricultural Commodities Act, 7 U.S.C. § 499a, *et seq*. ("**PACA**").

4. Pre-petition, PACA Creditors[2] sold and delivered to Debtors, in interstate commerce or contemplation thereof, wholesale quantities of produce all of which were accepted by Debtors and which remain due and owing in the following principal amounts.

| PACA Creditor | Principal Balance Owed[3] |
|---|---|
| FreshPoint Atlanta | $17,254.64 |
| FreshPoint North Carolina | $31,560.46 |
| Creation Gardens[4] | $13,393.75 |
| **Total** | **$62,208.85** |

---

[2] Undersigned counsel also represents Sunrise Fresh Produce, LLC t/a Sunrise Produce Jackson ("**Sunrise**"), which has also submitted documentation supporting its PACA claim to Debtors. Debtors and Sunrise have agreed to compromise Sunrise's PACA claim, and that the terms of the compromise should be set forth in any order granting the PACA Motion. Sunrise reserves all rights in the event Debtors do not comply with their agreement.

[3] Amounts indicated reflect the principal PACA trust debt only and do not include interest or attorneys' fees. Any amounts owed for non-produce items have been excluded.

[4] Creation Gardens' deliveries were made to a defunct subsidiary of the Debtors, Babalu Lexington #1, LLC, and certain deliveries by FreshPoint North Carolina were made to another defunct subsidiary of Debtors, Babalu Chapel Hill #1, LLC. Based on the common ownership and control of all Debtors and their subsidiaries, their admitted commingling of funds, and Debtor Eat Here's inclusion of these claims on its schedules, there can be no reasonable dispute that asserting these claims against Debtors is appropriate.

*See* FreshPoint Atlanta's PACA license information, statement of account, and representative sample invoices, attached hereto as **Exhibit 1**; FreshPoint North Carolina's PACA license information, statement of account, and representative sample invoices, attached hereto as **Exhibit 2**; and Creation Gardens' PACA license information, statement of account, and representative sample invoices, attached hereto as **Exhibit 3**.[5]

5. Each of the PACA Creditors is licensed under PACA and timely preserved its respective interest in the statutory trust arising under PACA by including the statutory language on the face of its invoices to Debtors. 7 U.S.C. § 499e(c)(4). FreshPoint Atlanta's and FreshPoint North Carolina's invoices include terms providing for payment of interest at 18% per annum and collection of attorneys' fees. *See* Exhibits 1-2 hereto. Creation Gardens' invoices include terms providing for recovery of attorneys' fees and collection costs. *See* Exhibit 3 hereto.

6. On August 20, 2019, this Court entered a *Final Order (I) Authorizing the Debtor to (A) Obtain Postpetition Financing on a Secured, Superpriority Basis and (B) Use Cash Collateral, (II) Granting Adequate Protection, and (III) Scheduling a Final Hearing* [Doc. 69], as amended (the "**Final DIP Order**"). The Final Order specifically provides the nothing therein shall be construed to prime, diminish or impair the rights of Debtors' PACA trust creditors, "provided, however, that (i) the PACA Claimants shall be required to comply with all terms, conditions, and procedures of any Order granting the [PACA Motion]." Final DIP Order ¶ 7.

7. On August 8, 2019, Debtors filed their PACA Motion, stating that

> Debtors believe a certain portion of the goods purchased from vendors prior to the Petition Date may qualify as 'perishable agricultural commodities' under PACA. As a result, insofar as those vendors abide by the notice requirements of PACA, such vendors will be eligible to assert PACA Claims granting them priority ahead of all other secured and unsecured creditors in these Bankruptcy Cases.

---

[5] Full and complete copies of these records, including all of PACA Creditors' invoices, have previously been provided to counsel for Debtors.

- 3 -

PACA Motion ¶ 12. Debtors estimate PACA claims of $121,589. *Id.* Debtors request a bar date of October 4, 2019 for all creditors asserting claims under PACA to file a "PACA Claim" with the Court, and serve the PACA Claim on counsel for Debtors. PACA Motion ¶ 14.

8. However, in the relief requested by Debtors, they also seek the unilateral discretion to determine whether a PACA Claim is valid. *Id.* ¶ 14. And, even when Debtors agree that a PACA Claim is valid, they seek the authority, but not the direction or requirement, to pay such valid PACA Claims <u>only to the extent that such claims are within the dollar amounts set forth in the Budget</u>. *Id*. ¶ 14.

## II.    BASIS FOR OBJECTION

9. PACA Creditors do not object to a bar date or reasonable procedure to review, reconcile, and promptly pay valid PACA trust claims in full. But they object to the procedure proposed by Debtors because it merely authorizes, but does not direct, Debtors to pay valid PACA trust claims, violates the prompt payment requirement under the PACA, and caps the amount of such PACA claims to those figures in the Budget. The procedure proposed by Debtors also lacks a mechanism for the resolution of any disputes relating to the PACA claims and does not provide for segregation of sufficient funds to pay PACA claims in full.

## III.    ARGUMENT

10. The PACA was enacted in 1930 to encourage fair trading in the marketing of produce and to prevent unfair and fraudulent practices in an industry peculiarly susceptible to such practices. *See* H. Rep. No. 543, 98th Cong., 1st Sess. (1983), reprinted in 1984 <u>U.S. Code Cong & Admin News</u> 405, 406. To achieve this purpose, the amendment established a statutory trust under which a receiver of produce holds as a fiduciary its produce-related assets, such as the produce itself or other products derived therefrom, as well as any receivables of proceeds from the sale thereof, and any assets purchased or commingled with such proceeds until full payment is made

to the seller. 7 U.S.C. § 499e(c)(2); *Frio Ice, S.A. v. Sunfruit, Inc.*, 918 F.2d 154 (11th Cir. 1990); *In re Kornblum & Co., Inc.*, 81 F.3d 280 (2d Cir. 1996); *Sanzone-Palmisano Co. v. M. Seaman Enterprises, Inc.,* 986 F.2d 1010, 1013 (6th Cir. 1993). Under the PACA, suppliers of produce who properly preserve their trust rights become beneficiaries of a floating, non-segregated statutory trust that arises on delivery of the buyer's first produce order and continues until the suppliers are paid in full. *Country Best v. Christopher Ranch, LLC*, 361 F.3d 629, 632 (11th Cir. 2004); *see also In re Atlantic Tropical Mkt. Corp.,* 118 B.R. 139, 141 (Bankr. S.D. Fla. 1990); *In re Kornblum & Co., Inc.*, 81 F.3d 280; *Sanzone-Palmisano Co.,* 986 F.2d at 1013; 7 C.F.R. § 46.46.

11.  Here, PACA Creditors are unpaid for wholesale quantities of produce supplied to Debtors worth the principal amount of $62,208.85. PACA Creditors, all of which are PACA licensees, preserved their trust rights by delivering to Debtors invoices including the provisions of 7 U.S.C. § 499e(c)(4). *See* Exhibits 1 - 3 hereto. This balance remains outstanding despite Debtors' receipt and acceptance of the produce, and their use and benefit of these produce items.

12.  The scope of PACA Creditors' trust claims, and those of similarly situated trust beneficiaries, include include all "sums owing in connection" with the produce sales under the trust provisions of PACA pursuant to 7 U.S.C. § 499e(c)(2). This section provides:

> [Produce] received by a ... dealer ... in all transactions, and all inventories of food or other products derived from [produce], and any receivables or proceeds from the sale of such commodities or products, shall be held in trust for the benefit of all unpaid suppliers or sellers of such commodities ... **until full payment of the sums owing in connection with such transactions has been received** by such unpaid suppliers, sellers, or agents.

7 U.S.C. § 499e(c)(2) (emphasis added). In interpreting the "sums owing in connection" language, several circuit courts of appeal, including the Eleventh Circuit, have held that a PACA trust creditor can recover attorneys' fees and interest as part of its PACA trust claim, if such a recovery is part of the parties' contract. *Country Best*, 361 F.3d at 632 (stating that the language in 7 U.S.C. 499e(c)(2) "unambiguously encompasses not only the price of commodities but also additional

- 5 -

related expenses … includ[ing] attorney fees and interest that buyers and sellers have bargained for in their contracts"); *Coosemans Specialties, Inc. v. Gargiulo*, 485 F.3d 701, 709 (2d Cir. 2007) ("where the parties' contracts include a right to attorneys' fees, they can be awarded as 'sums owing in connection with' perishable commodities transactions under PACA"); *Middle Mountain Land & Produce v. Sound Commodities*, 307 F.3d 1220, 1224 (9th Cir. 2002) ("it cannot be contended seriously that interpreting PACA claims to include contractual rights to attorneys' fees and interest under the 'in connection with' language of the statute is contrary to the statute's purpose"). Allowing recovery of contract-based attorneys' fees is consistent with PACA's goal "to give produce sellers a meaningful opportunity to recover full payment of the amounts due for their sales." *Country Best*, 361 F.3d at 632.

13. Subsection 2 of §499e(c), defines the corpus of the trust as all produce including all inventories of food or other products derived from produce, and all receivables or proceeds from the sale of produce or its products. 7 U.S.C. §499e(c)(2). The trust also extends to all inventory of produce a buyer obtained with a commingled account, and to any other assets acquired or maintained with PACA trust funds. *In re Atlantic Tropical Market Corp.*, 118 B.R. 139 at 141; *Sanzone-Palmisano Company*, 986 F.2d at 1012-13; *In re Kornblum*, 81 F.3d at 286. All assets of a produce buyer are presumed to be impressed with the PACA trust. *In re Atlantic Tropical Market Corp.*, 118 B.R. 139 at 141; *Sanzone-Palmisano Company*, 986 F.2d 1012-13.

14. Debtors are required by PACA, a federal statute co-equal with the Bankruptcy Code, to pay promptly for produce and to maintain sufficient assets in trust until full payment is made to all of their PACA trust beneficiaries, even in the event of the filing of bankruptcy. *Frio Ice*, 918 F.2d at 156; 49 Fed. Reg. at 45738; 7 U.S.C. § 499b(4). Congress also specifically directed that the failure to maintain the trust and make full payment promptly to the trust beneficiary is unlawful. 7 U.S.C. § 499b(4). Agricultural merchants, dealers and brokers "are required to maintain

trust assets in a manner that such assets are freely available to satisfy outstanding obligations to sellers of perishable agricultural commodities[,]" and any act or omission inconsistent with this responsibility, including dissipation of trust assets, is proscribed. 7 C.F.R. § 46.46(e)(1). Dissipation of trust assets is defined as "any act or failure to act which could result in the diversion of trust assets or which could prejudice or impair the ability of unpaid [sellers] to recover money owed in connection with produce transactions." 7 C.F.R. § 46.46(a)(2). Congress also specifically directed that the failure to maintain the trust and make *full payment promptly* to the trust beneficiary is unlawful. 7 U.S.C. § 499b(4).

15.    PACA trust assets are not considered part of the bankruptcy estate. *In re Kornblum & Co., Inc.*, 81 F.3d at 284; 11 U.S.C. § 541(d). The PACA trust provision provides that unpaid produce sellers "are placed first in line among creditors for all produce-related assets if the produce dealer declares bankruptcy." *Frio Ice,* 918 F.2d at 156. "It is clear from the terms of the PACA amendments and from the supporting legislative history that Congress intended to create a *priority* status for unpaid produce claimants, priming even the administrative claims which normally stand first in line in a bankruptcy distribution." *In re Fresh Approach, Inc.*, 51 B.R. 412, 420 (Bankr. N.D. Tex. 1985) (emphasis in original). "Allowing a defunct PACA trustee to pay other creditors with PACA funds before the seller is paid in full would frustrate [the purpose of PACA], and would be contrary to the language of PACA and its accompanying regulations." *C.H. Robinson Company v. Alanco Corp.*, 239 F.3d 483, 488 (2nd Cir. 2001). Thus, there is no question that PACA trust assets are not property of the Debtors' estate and must be set aside for distribution to trust beneficiaries. *In re Long John Silver's Restaurants, Inc.*, 230 B.R. 29, 32 (Bankr. D. Del. 1999); *In re Kelly Food Products, Inc.*, 204 B.R. 18 (Bankr. C.D. Ill. 1997); *Morris Okun, Inc. v. Harry Zimmerman, Inc.*, 814 F. Supp. 346, 348 (S.D.N.Y. 1993); *In re Southland & Keystone*, 132 B.R. 632 (9th Cir. BAP 1991); *In re Asinelli, Inc.*, 93 B.R. 433 (M.D.N.C. 1988); *In re Carolina

*Produce Distributors, Inc.*, 110 B.R. 207 (W.D.N.C. 1990); *In re Fresh Approach, Inc.*, 48 B.R. 926 (Bankr. 1985); *In re Milton Poulos, Inc.*, 94 B.R. 648 (Bankr. C.D.Cal. 1988); see also 11 U.S.C. § 541(d) (property in which debtor holds legal title, but not an equitable interest, does not become part of the estate).  Debtors concede this point in their PACA Motion. PACA Motion ¶ 12.

16. Furthermore, PACA beneficiaries are entitled to immediate turnover of their trust funds upon the commencement of a bankruptcy.  *In re Fresh Approach*, 51 B.R. 412 (Bankr. N.D.Tex. 1985); *In re Kelly Food Products, Inc.*, 204 B.R. 18; *In re W.L. Bradley Co., Inc.*, 75 B.R. 505 (Bankr. E.D.Pa 1987).  Unpaid produce suppliers are entitled to immediate relief, either by the segregation of trust assets, *Frio Ice, S.A.* 918 F.2d at 156; *Dole Fresh Fruit Co. v. United Banana Co.*, 821 F.2d 106 (2d Cir. 1987); *In re Richmond Produce Co., Inc.*, 112 B.R. 364 (N.D.Cal. 1990); *J.R. Brooks & Son v. Norman's Country Market*, 98 B.R. 47, 50 (N.D.Fla. 1989), or by immediate payment.  *In re Kelly Food Products, Inc.*, 204 B.R. 18 (Debtors required to immediately pay trust assets to the PACA trust creditors).  Accordingly, as PACA trust beneficiaries, PACA Creditors are lawfully entitled to immediate turnover of their PACA trust assets.  *In re Kelly Food Products, Inc.*, 204 B.R. 18; *In re W.L. Bradley Co., Inc.*, 75 B.R. 505; and *In re Fresh Approach, Inc.*, 51 B.R. 412.

17. Where, as here, Debtors are continuing operations and using cash collateral belonging to PACA Creditors, including substantial payments made to Debtors' professionals, steps must be taken to ensure that the rights of PACA trust creditors are adequately protected and that Debtors are complying with their obligations under PACA.  The proposed procedure set forth in the PACA Motion impermissibly provides for full discretion for Debtors to review PACA claims and caps the amount that qualified trust beneficiaries can recover.

18. Debtors have also tied the relief to be granted on the PACA Motion to the protections for all PACA trust beneficiaries set forth in paragraph 21 the Final DIP Order. This paragraph ensures that the rights granted to the Debtors' DIP Lender do not prime, diminish or impair the rights of Debtors' PACA trust beneficiaries, to the extent these beneficiaries comply with the terms, conditions and procedures of any order granting the PACA Order. DIP Order ¶ 21. It is appropriate to provide an orderly procedure to determine the scope of valid trust claims, and the resulting impact on the Debtors and the DIP Lender's interests. But, by requesting that the recovery for all PACA beneficiaries be limited to funds so earmarked in the Budget by the DIP Lender and Debtors, Debtors and the DIP Lender have craftily attempted to cap the overall interests of PACA trust beneficiaries in the Debtors' assets, and the protections granted to them by the Court in the Final DIP Order. This appears to be an attempt to impermissibly impair the rights of all of Debtors' PACA beneficiaries by tying their interests to the budgeted amounts, and thereby limiting their protections in the Final DIP Order.

19. A review of the Budget, attached as **Exhibit 4** for the Court's convenience, shows that funds have specifically been earmarked for payment of certain, specific PACA creditors; these aggregate amounts through October 27, 2019 as set out in the Budget are as follows: "FreshPoint PACA Claim": budgeted $57,089; "Sunrise, Creative Gardens,[6] and Piazza PACA Claims": budgeted $64,500. Although, by now, FreshPoint should have received five (5) payments under the timeline set out in the Budget, it has received only one (1) payment on August 5, 2019. Debtors' failure to comply with the payments set forth in the budgeted amounts draws into question their true intentions regarding payment of PACA claims. And the total amount budgeted for "FreshPoint" does not include the full amount of FreshPoint Atlanta's and FreshPoint North

---

[6] Presumably, the "Creative Gardens" listed in the Budget as a PACA creditor is the PACA Creditor, Creation Gardens, listed on the Debtors' schedules and is an objecting party here.

- 9 -

Carolina's claims, inclusive of interest and attorneys' fees, all of which are "sums owing in connection" with the underlying produce debt. FreshPoint Atlanta and FreshPoint North Carolina estimate that their full aggregate PACA claims are not less than $69,000.00, an amount which will increase because they have been compelled to file this objection and preserve their rights and those of similarly situated trust beneficiaries due to Debtors' intransigence.

20. For unknown reasons, although they are all co-beneficiaries of the PACA trust, Sunrise, "Creative" Gardens, and Piazza have all been aggregated in a separate category from FreshPoint in the Budget. Sunrise has agreed to compromise its PACA claim for $14,228.56, leaving $50,271.44 earmarked only for "Creative" Gardens and Piazza. Creation Gardens' invoices also provide for payment of attorneys' fees and costs on past due accounts. The true amount of Piazza's PACA claim is unknown. Additionally, not only have Debtors failed to account for payment of all "sums owing in connection" with their PACA claims, they have failed to account for all PACA beneficiaries. For instance, Robertson Produce of Mississippi, LLC filed a Proof of Claim asserting it is a PACA creditor in the amount of $32,305.48. Claim No. 21. Public records show it is a dealer licensed under PACA. Debtors apparently have not accounted for the PACA trust claims of this company, or any other company not discussed herein. Instead, Debtors limit the amount available for payment of PACA claims to "the dollar amounts set forth in the Budget," or $121,589. Meanwhile, over this same period, Debtors' counsel is budgeted to receive $325,000 (AGG/Shulten) and their financial advisor is budgeted to receive $227,000 (GGG).

21. These facts show that the PACA Motion and the budgeted funds are an empty promise, designed to placate unpaid PACA creditors while Debtors continue to use their trust assets as cash collateral to continue their operations and pay their professionals. Debtors are required to maintain PACA trust assets, which are not estate assets, and make full payment <u>promptly</u> to the PACA beneficiaries, even in the event of bankruptcy. They are currently in

violation of the statute, and the relief they request would allow them to continue to violate the statute and continue to cause the very harms Congress intended to prevent, such as Debtors' unlawfully delaying payment of PACA trust assets and failing to pay their PACA beneficiaries in full.

22. PACA Creditors agree that a deadline to submit PACA claims is warranted and that October 4, 2019 is a reasonable amount of time in order to provide notice to Debtors' creditors of their need to file a PACA Claim. However, PACA Creditors request that the Order also require that Debtors segregate sufficient funds to pay **all** PACA beneficiaries, including an estimate of the "sums owed in connection" with their underlying PACA Claims, which should be increased if filed PACA Claims exceed the segregated amount. Debtors also should be directed to pay all undisputed PACA Claims within 10 days of their filing.[7] To the extent there is a good faith dispute that cannot be resolved by agreement, Debtors should then be required to file a report with the Court detailing their objections, to which the PACA creditors could respond and seek a ruling from the Court.

## IV.  CONCLUSION

23. For the foregoing reasons, the PACA Creditors respectfully request that this Court (a) require Debtors to immediately segregate sufficient funds to pay **all** of their PACA creditors in full, which amount should be increased if filed PACA Claims exceed the estimated amount; and (b) hold that the PACA Creditors must be paid unconditionally, promptly, and in full for their PACA trust claims.

---

[7] PACA's default prompt payment term is 10 days. 7 C.F.R. § 46.2(aa)(5). All of the claims would be significantly past due by October 4, 2019, so PACA beneficiaries should not have to wait any longer for payment of their undisputed PACA claims.

- 11 -

Respectfully submitted this 9th day of September, 2019.

        s/ Kevin A. Maxim
Kevin A. Maxim
Georgia Bar No. 478580
Attorney for
FreshPoint Atlanta, Inc.,
FreshPoint North Carolina, Inc. (t/a FreshPoint Raleigh and t/a FreshPoint Nashville, Inc.),
Sunrise Fresh Produce, LLC (t/a Sunrise Jackson),
Sysco Central Alabama, Inc.,
Sysco Charlotte, LLC,
Sysco Knoxville, LLC,
Sysco Memphis, LLC,
Sysco Jackson, LLC, and
Creation Gardens, Inc.

THE MAXIM LAW FIRM, P.C.
1718 Peachtree St., NW
Suite 599
Atlanta, Georgia 30309
Phone: (404) 924-4272
Fax:    (404) 924-4273
kmaxim@maximlawfirm.com

## **CERTIFICATE OF SERVICE**

I hereby certify that on September 9, 2019, a copy of the foregoing limited objection was served (a) via the Court's CM/ECF system to any party who has filed a request for notice pursuant to Rule 2002 of the Bankruptcy Rules, and (b) on Debtors' counsel by e-mail (to Darryl.Laddin@AGG.com) by depositing a copy in the first class United States mail, postage pre-paid, and addressed to: Arnall Golden Gregory, LLC, Attn: Darryl Scott Laddin, 171 17th Street, NW, Suite 2100, Atlanta, Georgia 30363.

/s/ Kevin A. Maxim
Kevin A. Maxim