# <u>EXHIBIT B</u>

# BID PROCEDURES ORDER

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| EAT HERE BRANDS, LLC, *et al.*[1], | ) | Lead Case No. 19-61688-WLH |
| | ) | |
| Debtors. | ) | Jointly Administered |
| | ) | |

**ORDER (A) AUTHORIZING AND APPROVING BID PROCEDURES IN
CONNECTION WITH THE SALE OF SUBSTANTIALLY ALL OF THE
DEBTORS' ASSETS; (B) SCHEDULING AN AUCTION AND SALE HEARING;
(C) APPROVING THE MANNER AND FORM OF NOTICES OF SALE, AUCTION,
AND SALE HEARING; AND (D) GRANTING RELATED RELIEF**

Upon the Debtors' motion [Docket No. _____] (the "Sale Motion")[2] for entry of an order pursuant to Sections 105, 363, and 365 of the Bankruptcy Code and Rules 2002, 6004, 6006, 9006, and 9008 of the Bankruptcy Rules: (i) authorizing and approving Bid Procedures in connection with the sale (the "Sale") of substantially all of Debtors' assets; (ii) approving the form of the APA, (iii) scheduling an Auction and Sale Hearing; (iv) approving the manner and form of notices of Sale, Auction, and Sale Hearing; and (v) granting related relief; and it appearing that no previous motion for similar relief having been made; and it appearing that the Court has jurisdiction over this matter; and it appearing that due notice of the Sale Motion as set forth therein is sufficient under the circumstances, and that no other or further notice need be provided; and it further appearing that the relief requested in the Sale Motion is in the best interests of the Debtors and their respective bankruptcy estates and creditors; and upon all of the

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows:  Eat Here Brands, LLC (9694); Babalu Atlanta #1 LLC (4025); Babalu Atlanta #2 LLC (5240); Babalu Knoxville #1 LLC (3163); Babalu Memphis #1 LLC (9320); Babalu Memphis #2 LLC (4558); Babalu, LLC (7673); and Babalu Birmingham #1 LLC (1892).  The Debtors' mailing address is 9755 Dogwood Road, Suite 200, Roswell, Georgia 30075.

[2]    All capitalized terms not defined in this Bid Procedures Order shall have the meaning given to them in the Sale Motion.

13984348v2

proceedings had before the Bankruptcy Court; and after due deliberation and sufficient cause

appearing therefor, NOW, THEREFORE, THE COURT HEREBY FINDS AND CONCLUDES

THAT:[3]

A.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157

and 1334.

B.      This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).  Venue is proper in

this district and this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

C.      Good and sufficient notice of the Sale Motion and the relief sought therein has

been given under the circumstances, and no other or further notice is required except as set forth

herein with respect to the Auction and Sale Hearing.  A reasonable opportunity to object or be

heard regarding the relief provided herein has been afforded to creditors and parties-in-interest.

D.      The Debtors have articulated good and sufficient reasons for, and the best

interests of the estates, creditors, employees, and other parties in interest and stakeholders will be

served by, this Court granting the relief requested in the Sale Motion, including approval of

(1) the Bid Procedures and (2) the form, timing, and manner of notice of the proposed Sale, the

Bid Procedures, and the other matters described this Bid Procedures Order, including the

Sale Notice.

E.      The Bid Procedures are reasonably designed to maximize the value to be achieved

for the Acquired Assets.

F.      Under the circumstances, the Bid Procedures constitute a reasonable, sufficient,

adequate, and proper means to provide any potential competing bidders with an opportunity to

submit and pursue higher and better offers for all or substantially all of the Acquired Assets.

---

[3]     Findings of fact shall be construed as conclusions of law, and conclusions of law shall be construed as findings
of fact, as appropriate, pursuant to Rule 7052 of the Bankruptcy Rules.

G.      The terms and conditions of the APA as they relate to the Bid Procedures and sale process are fair, reasonable, and the best available to the Debtors under the circumstances, reflect an exercise of prudent business judgment consistent with the Debtors' fiduciary duties, are based on good, sufficient, and sound business purposes and justifications, and are supported by reasonably equivalent value and consideration.

H.      The Sale Notice is reasonably calculated to provide parties in interest with proper notice of the sale of the Purchased Assets, the related Bid Procedures, the Auction, the Sale Hearing, the structure of the Sale, and related implications for interested parties, including, without limitation, creditors, customers, suppliers, and current and former employees.

I.      The Assumption and Assignment Notice is reasonably calculated to give counterparties to executory contracts and unexpired leases proper notice of proposed assumption and assignment and establishment of cure costs.

J.      The Sale Motion and this Bid Procedures Order comply with all applicable provisions of the Bankruptcy Code and the Bankruptcy Rules.

K.      Due, sufficient, and adequate notice of the relief granted in this Bid Procedures Order has been given to parties in interest.

NOW, THEREFORE, IT IS HEREBY ORDERED THAT:

1.      The Sale Motion is GRANTED to the extent set forth in this Bid Procedures Order.

2.      All objections to the entry of this Bid Procedures Order not otherwise withdrawn, waived or settled, and all reservations of rights included therein, hereby are overruled and denied on the merits.

3.      The following Bid Procedures and Cure Procedures are hereby approved:

      a.     Qualified Bids. The Debtors shall solicit bids through **October 10, 2019** (the "Bid Deadline"). Each competing bidder other than the Stalking Horse Bidder shall, on or before **12:00 p.m. (prevailing Eastern Time) on the Bid Deadline**, deliver to the Debtors as follows (collectively, a "Qualified Bid"):

(i)    a cash deposit (via certified or bank check or wire transfer) of at least ten percent (10%) of the cash component of the purchase price of such bid (the "Deposit");

(ii)    reasonable proof acceptable to the Debtors, in consultation with the official committee of unsecured creditors appointed in these Bankruptcy Cases (the "Committee") and Origin Bank, of the interested party's ability to consummate a purchase of the Acquired Assets and assumption of any liabilities with respect to which such bidder seeks assignment from the Debtors and provide adequate assurance of future performance under all unexpired leases or executory contracts with respect to which such bidder seeks assignment from the Debtors, each on the terms set forth in such party's bid, including evidence of sufficient financing along with any other financial information which a bidder believes substantiates its ability to perform its obligations with regard to its bid (collectively, "Financial Information");

-and-

(iii)    an executed asset purchase agreement, which asset purchase agreement shall (1) specify the amount of cash or other consideration offered by the competing bidder for the Acquired Assets (provided that the cash component of such bid may *not be less than* the sum of $3,720,000 (which is the sum of the cash component of the purchase price in the Stalking Horse Bidder's APA, the Break-Up Fee, and $50,000); (2) not be subject to unperformed due diligence, financing conditions, corporate approval conditions, or regulatory approval conditions, nor provide for any expense reimbursement; (3) constitute an irrevocable offer by such competing bidder to complete its proposed purchase upon the terms set forth therein, and must confirm that it is irrevocable until closing of the sale of the Acquired Assets to the Successful Bidder (as defined below), and provide for an outside date of closing that is on or before October 27, 2019; (4) provide for the purchase of substantially all of the Acquired Assets; (5) be accompanied by a marked-up version of the APA that shows all differences between such asset purchase agreement and the APA (which was attached to the Sale Motion as **Exhibit A**); (6) contain a list of the Debtors' executory contracts and unexpired leases with respect to which the bidder seeks assignment from the Debtors; (7) fully disclose the identity of each entity that will be bidding for the

Acquired Assets or otherwise participating in connection with such bid; and (8) indicate whether such competing bidder agrees to act as the Back-Up Bidder (as defined below) in the event that such competing bidder is not the Successful Bidder (as defined below), as well as identify any date past which it would not serve as the Back-Up Bidder.

If the competing bidder is an entity formed for the purpose of a sale transaction, then such entity must provide financial disclosure acceptable to Debtors that demonstrates such competing bidder's financial ability to consummate a competing sale transaction. A competing bidder also must establish that it has the financial ability to consummate its proposed transaction by **no later than October 10, 2019**. In order to participate in the bidding process, receive due diligence materials, and/or otherwise be considered for any purpose hereunder, a competing bidder must first deliver an executed confidentiality agreement in form and substance satisfactory to the Debtors and their counsel, which confidentiality agreement will be made available to, among others, those interested parties that contact Debtors' counsel, provided that, if any competing bidder is or is affiliated with a competitor of the Debtors, the Debtors will not be required to disclose to such competing bidder any trade secrets or proprietary information. If the Debtors determine that a competing bidder does not constitute a Qualified Bidder (as defined below), then such competing bidder's ability to receive due diligence access or additional non-public information shall terminate, except as otherwise agreed by the Debtors.

b.      Credit Bid by Prepetition and DIP Lender. Origin Bank, serves as the Debtors' prepetition secured lender and the Debtors' post-petition secured lender in these Bankruptcy Cases. Origin Bank shall be entitled to credit bid up to the full value of its pre-petition and post-petition secured claims totaling $5,596,700.00 plus any amounts then extended to the Debtors under the DIP loan (which additional amount shall be provided to any Qualified Bidder at the Auction).

c.      Qualified Bidders. Any initial overbid for the Acquired Assets shall be in the amount equal to the sum of $3,720,000. In the event that the Debtors shall reasonably determine that such overbid is a higher and better bid than that set forth in the APA, the Stalking Horse Bidder shall have the right to amend the APA as necessary in its reasonable discretion, as agreed with the Debtors, in order to cause the Stalking Horse Bidder's bid format to be comparable to such higher and better bid (for the avoidance of doubt, the amendment of the APA by the Stalking Horse Bidder will in no event result in the cancellation of the Auction if the Debtors have received at least one (1) other Qualified Bid). Only those persons or entities who have submitted a Qualified Bid in compliance with the Bid Procedures Order shall be a "Qualified Bidder"; *provided, however,* that the Stalking Horse Bidder shall be deemed to be a Qualified Bidder for all purposes under the Bid Procedures. Each Qualified Bidder shall be invited to attend the Auction at the law office of Debtors' counsel of record, Arnall Golden Gregory LLP, 171 17th Street, N.W., Suite 2100, Atlanta, Georgia 30363-1031, which Auction

13984348v2                                              5

must be attended in person by the Qualified Bidder or an authorized representative of the Qualified Bidder.

d.      Identity of Bidders.  In addition to the information required above, each competing bidder other than the Stalking Horse Bidder shall, on or before **October 10, 2019**, provide written identification of the bidder, its principals, and the representatives thereof who are authorized to appear and act on their behalf for all purposes regarding the contemplated transaction and written disclosure of any connections or agreements with the Debtors, the Stalking Horse Bidder, any other known potential bidder, and/or any officer, director, manager, or direct or indirect equity security holder of the Debtors.

e.      The Auction. The Auction shall commence at **10:00 a.m. (Eastern) on October 16, 2019** at the law office of Debtors' counsel of record, Arnall Golden Gregory LLP, 171 17th Street, N.W., Suite 2100, Atlanta, Georgia 30363-1031.  The Acquired Assets shall be sold free and clear of all liens, claims, interests, and encumbrances to the fullest extent allowed under Section 363(f) of the Bankruptcy Code and applicable law.  The following rules shall govern the Auction:

i.      At least 24 hours prior to the Auction, the Debtors will notify all Qualified Bidders in writing of the highest and best Qualified Bid, as determined by Debtors, in consultation with the Committee and Origin Bank, which may be the APA (the "Baseline Bid"). Complete copies of all asset purchase agreements, amendments to the APA, and all other bid materials submitted by each other Qualified Bidder will be available to each other Qualified Bidder upon request to Debtors' counsel of record.

ii.     Only Qualified Bidders may bid at the Auction. If multiple Qualified Bids are received, each Qualified Bidder shall have the right to continue to improve its Qualified Bid at the Auction. Bidding at the Auction shall proceed in increments of at least $25,000 (the "Bidding Increment"), and the Bidding Increment may be increased in the Debtors' discretion.  Only the authorized representatives of each of the Stalking Horse Bidder and any other Qualified Bidder, the Debtors, Origin Bank, the Committee, and United States Trustee shall be permitted to attend the Auction, except as otherwise expressly ordered by the Court.

iii.    At the conclusion of the Auction, subject to Court approval following the Auction, the highest and best offer shall be selected and announced as the successful bidder by the Debtors (the "Successful Bidder"), and the bid of the bidder that submits the next highest and best bid (designated in accordance with the Debtors' business judgment), in consultation with the Committee and Origin Bank, shall be selected and announced by the Debtors (the "Back-Up Bid" by the "Back-Up Bidder"); provided, however, that designation of such bidder as the Back-Up Bidder

must be consistent with the asset purchase agreement submitted in connection with such bidder's bid. For the avoidance of doubt, if there are no Qualified Bidders who agree to act as the Back-Up Bidder, then there shall be no Back-Up Bidder. There will be no further bids or offers considered by the Debtors following the conclusion of the Auction and the announcement of the Successful Bidder and, as applicable, the Back-Up Bidder.

iv.     If the Debtors do not receive at least one Qualified Bid from a Qualified Bidder other than the Stalking Horse Bidder, then (1) no Auction shall be conducted, the Debtors and the Stalking Horse Bidder are authorized to move forward with the transactions contemplated by the APA (subject to the entry of the Sale Order) and the Sale Hearing, the transaction consideration contemplated by the APA will be determinative of the value of the Acquired Assets, and the Court shall not consider any competing or alternative offers or proposals to purchase the Acquired Assets; and (2) the Debtors will file on the docket in the Lead Bankruptcy Case a "Notice of Cancellation of Auction."

v.      The Auction may be adjourned from time to time by the Debtors, provided that, no such adjournment shall affect the rights of the Stalking Horse Bidder under the APA. Reasonable notice of such adjournment and the time and place for the resumption of the Auction shall be given to the Stalking Horse Bidder, all Qualified Bidders that have submitted a Qualified Bid, and counsel for Origin Bank, counsel for the Committee, and the United States Trustee.

f.      Successful Bidder. The Debtors may base the selection of the Successful Bidder and Back-Up Bidder on the following factors, among others: purchase price, liabilities assumed in the bid (provided that in no event shall the cash component required for a Qualified Bid be reduced as a result of a bidder's proposed assumption of liabilities), retention of the Debtors' employees, the markup of the form of asset purchase agreement submitted with the bid, and the apparent ability of a Qualified Bidder to close the proposed transaction. The Debtors may (a) reject any bid that is (i) inadequate or insufficient, (ii) not in conformity with the requirements of the Bankruptcy Code, the Bid Procedures, or the terms and conditions of sale, or (iii) contrary to the best interests of the Debtors, their bankruptcy estates, and their creditors; and/or (b) refuse to consider any bid that fails to comply with the Bid Procedures. After the determination of the Successful Bidder, the Debtors shall (i) if the Successful Bidder is a bidder other than the Stalking Horse Bidder, promptly execute the asset purchase agreement previously executed and submitted by such Successful Bidder, together with any changes thereto necessitated by the parties' actions at the Auction, or (ii) if the Successful Bidder is the Stalking Horse Bidder, move forward with the transactions contemplated by the APA. All rights of the Stalking Horse Bidder, (if any) to object to the Debtors' selection of a Successful Bidder or Back-Up Bidder, or to object to the consummation of the sale transaction represented by either such bid, are preserved and shall be considered by the Court at the Sale Hearing.

g.       Back-Up Bidder. If the Successful Bidder fails to consummate an approved sale in accordance with the applicable asset purchase agreement or such agreement is terminated (or, in the event that the Stalking Horse Bidder is the Successful Bidder, the Parties fail to consummate the transactions contemplated by the APA or the APA is terminated), (i) the Debtors shall be authorized to deem the Back-Up Bid the Successful Bid, and the Debtors shall be authorized to consummate the sale with the Back-Up Bidder without further order of the Court (or, in the event that the Stalking Horse Bidder is the Back-Up Bidder, move forward with the transaction contemplated by the APA, subject to the APA); provided, however, that if the Stalking Horse Bidder is the Successful Bidder, the Back-Up Bidder shall remain the Back-Up Bidder in accordance with the Back-Up Bidder's asset purchase agreement; and (ii) the Deposit provided by such defaulting bidder shall be forfeited to the Debtors in accordance with the defaulting bidder's asset purchase agreement.  The Debtors specifically reserve the right to seek all appropriate damages or equitable remedies from a defaulting Successful Bidder or Back-Up Bidder.

h.       Modification of Bidding and Auction Procedures. The Debtors, in their sole discretion, may modify the Bid Procedures with respect to the Bid Deadline, whether a bid that materially complies with the requirements of the Bid Procedures (as determined by the Debtors in the reasonable exercise of their business judgment consistent with their fiduciary duties) is a Qualified Bid, and the time, manner, and place of the Auction; provided, however, that the Bid Procedures may not be otherwise modified except with the express written consent of the Debtors and the Stalking Horse Bidder; provided, further, however, that in no event may the Bid Procedures be modified to reduce the required cash component of a Qualified Bid.  All rights of the Stalking Horse Bidder in respect of any modification of the Bid Procedures by the Debtors are preserved.  The Debtors may make such modification to the Bidding Procedures as are necessary and not inconsistent with the Bid Procedures Order.

i.       Contract Cure Procedures.  To the extent a Qualified Bidder seeks approval in the Sale Order (as defined in the Motion) of the assumption and assignment of executory contracts and/or unexpired leases, the following procedures (the "Cure Procedures") shall apply for notifying counterparties to executory contracts and unexpired leases of potential Cure Amounts (as defined below).

      i.       Within two days (2) days after the Bid Deadline the Debtors will file a notice of potential assumption, assignment, and/or transfer of executory contracts and unexpired leases identified by each Qualified Bidder (the "Designated Executory Contracts"), substantially in the form attached to the Sale Motion as **Exhibit D** (the "Notice of Assumption and Assignment"), and serve such notice on all non-debtor parties to the Designated Executory Contracts (the "Contract Notice Parties").  For avoidance of doubt, the Debtors shall file a Notice of Assumption related to the APA

within two days (2) of the entry of the Bid Procedures Order, and serve such notice on all of the Contract Notice Parties.

ii.     The Notice of Assumption and Assignment shall identify the calculation of the cure amounts, if any, that the Debtors believe must be paid to cure all defaults outstanding under each of the Designated Executory Contracts (the "Cure Costs") as of such date. The Notice of Assumption and Assignment shall also contain information regarding how a non-debtor party to a Designated Executory Contract may obtain adequate assurance of future performance information from the applicable Qualified Bidder (the "Adequate Assurance Information"). The Notice of Assumption and Assignment shall provide that a non-debtor party to a Designated Executory Contract may object to the Cure Costs, the Adequate Assurance Information or the assumption and assignment of such executory contract or unexpired lease at the Sale Hearing or at a later hearing, as determined by the Debtors subject to the Court's calendar.

(j)     Break-Up Fee.   In the event the Successful Bidder is deemed to be a person or entity other than the Stalking Horse Bidder, and such Successful Bidder successfully closes on the sale of the Debtors' assets, then, upon such closing, the Debtors shall pay the Break-Up Fee in the amount of $50,000 to the Stalking Horse Bidder.

4.     The Break-Up Fee and the Expense Reimbursement are approved.

5.     The form of the APA is approved.

6.     Each Qualified Bidder participating at the Auction will be required to confirm that it has not engaged in any collusion with respect to the bidding or the Sale. All Qualified Bidders at the Auction shall be deemed to have consented to the core jurisdiction and final adjudicatory power of the Court and waived any right to a jury trial in connection with any disputes relating to the Auction, and the construction and enforcement of each Qualified Bidder's contemplated transaction documents, as applicable.

7.     The Auction will be conducted openly.

8.     Bidding at the Auction will be transcribed or videotaped.

13984348v2                                    9

9.      The Sale Hearing shall be held on **October 18, 2019 at 1:30 p.m. (Eastern)** in Courtroom 1403 before The Honorable Judge Wendy L. Hagenau, United States Bankruptcy Judge, United States Courthouse, 75 Ted Turner Drive SW, Atlanta, GA 30303.

10.     The Sale Hearing may be adjourned from time to time without further notice other than an announcement by the Debtors in the Court of such adjournment on the date scheduled for the Sale Hearing, provided that no such adjournment shall affect the rights of the Stalking Horse Bidder under the APA

11.     The form of Sale Notice attached to the Sale Motion as **Exhibit C** is hereby approved.  The Debtors shall serve within two (2) days (by first class mail, postage prepaid) after entry of this Bid Procedures Order (the "Mailing Deadline"), the Sale Notice upon: (i) the entire creditor matrix in each of the Bankruptcy Cases and (ii) via electronic mail to all persons or entities known or reasonably believed to have an interest in purchasing the Acquired Assets.

12.     Notice as set forth in the preceding paragraph shall constitute good and sufficient notice of the Sale Motion as it relates to the Debtors' request for the scheduling of the Auction and the Sale Hearing, and no other or further notice of the Sale Motion, the Auction, and/or the Sale Hearing shall be necessary or required.

13.     The form of Assumption and Assignment Notice substantially in the form attached to the Sale Motion as **Exhibit D** is hereby approved.

14.     Responses or objections, if any, to the proposed Sale shall be filed with this Court and served, so as to be actually **received no later than October 15, 2019 at 4:00 p.m. (Eastern)** on: (a) counsel to the Debtors, Arnall Golden Gregory LLP, 171 17th Street, N.W., Suite 2100, Atlanta, Georgia 30363-1031, Attn: Darryl Laddin; (b) counsel to the Stalking Horse Bidder, 999 S. Shady Grove Road, Suite 500, Memphis, Tennessee 38120, Attn: John A.

13984348v2

Bobango; (c) counsel for Origin Bank, Morris, Manning & Martin, LLP, 3343 Peachtree Road, N.E., Suite 1600, Atlanta, Georgia 30326, Attn. Frank W. DeBorde, (d) counsel for the Official Committee of Unsecured Creditors, Scroggins & Williamson, P.C., 4401 Northside Parkway, Suite 450, Atlanta, Georgia 30327, Attn. Hayden Kepner, Jr.; and (e) the Office of the United States Trustee, 75 Ted Turner Drive, S.W., Room 362, Atlanta, Georgia 30303 (collectively, the "Notice Parties").

15.    The Debtors are authorized and empowered to take such steps, incur and pay such costs and expenses, and do such things as may be reasonably necessary to fulfill the notice requirements established by this Bid Procedures Order.

16.    The stays provided for in Rules 6004(h) and 6006(d) of the Bankruptcy Rules are waived and this Bid Procedures Order shall be effective and enforceable immediately upon its entry.

17.    In the event of any inconsistency between the terms and conditions of this Bid Procedures Order and any order entered by this Court approving the Debtors' entry into the debtor-in-possession financing facility on an interim or final basis (the "DIP Orders"), the provisions of the DIP Orders shall govern and control.

18.    The Court shall retain jurisdiction to hear and determine all matters arising from the implementation of this Order.

**\*\*\* END OF ORDER \*\*\***

13984348v2
11

Prepared and presented by:

ARNALL GOLDEN GREGORY LLP

/s/ Darryl S. Laddin
Darryl S. Laddin
Georgia Bar No. 460793
Sean C. Kulka
Georgia Bar No. 648919
171 17th Street, N.W., Suite 2100
Atlanta, Georgia 30363-1031
Phone: (404) 873-8500
Fax: (404) 873-8683
Email: darryl.laddin@agg.com
Email: sean.kulka@agg.com

*Attorneys for Debtors and Debtors in Possession*