**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| EAT HERE BRANDS, LLC, *et al.*[1], | ) | Lead Case No. 19-61688-WLH |
| | ) | |
| Debtors. | ) | Jointly Administered |
| | ) | |

**DEBTORS' OBJECTION TO APPLICATION OF S.A.R. ASSOCIATES, INC.**
**FOR ALLOWANCE AND PAYMENT OF AN ADMINISTRATIVE EXPENSE CLAIM**
**PURSUANT TO BANKRUPTCY CODE SECTION 503(B)(9)**

Eat Here Brands, LLC, Babalu Atlanta #1 LLC, Babalu Atlanta #2 LLC, Babalu Knoxville #1 LLC, Babalu Memphis #1 LLC, Babalu Memphis #2 LLC, Babalu, LLC, and Babalu Birmingham #1 LLC (collectively, the "Debtors") file this objection (the "Objection") to the *Application of S.A.R. Associates, Inc. for Allowance and Payment of an Administrative Expense Claim Pursuant to Bankruptcy Code Section 503(b)(9)* [Docket No. 86] (the "Motion") scheduled to be heard on September 26, 2019 at 1:30 p.m. (the "Hearing"). In support of their Objection, the Debtors show the Court the following:

**INTRODUCTION**

1.     The Motion should be denied because SAR (defined below) has not met, and cannot meet, its burden of establishing the elements of an administrative expense claim under 11 U.S.C. § 503(b)(9) because it has failed to (a) show that it delivered "goods" to the Debtors within 20 days prior to the Petition Date (defined below) and (b) show that any goods/services that it delivered were sold to the Debtors in the "ordinary course" of the Debtors' businesses.

---

[1]     The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows:  Eat Here Brands, LLC (9694); Babalu Atlanta #1 LLC (4025); Babalu Atlanta #2 LLC (5240); Babalu Knoxville #1 LLC (3163); Babalu Memphis #1 LLC (9320); Babalu Memphis #2 LLC (4558); Babalu, LLC (7673); and Babalu Birmingham #1 LLC (1892).  The Debtors' mailing address is 9755 Dogwood Road, Suite 200, Roswell, Georgia 30075.

Even if SAR was entitled to an administrative expense claim under 11 U.S.C. § 503(b)(9), which it is not, it is *not* entitled to the immediate payment of the SAR Claim (defined below) because immediate payment of such claim: (a) would prejudice the Debtors and their creditors other than SAR, (b) is *not* necessary to prevent undue hardship to SAR, and (c) was *not* included in the Budget (defined below).

### BACKGROUND

2.      On July 30, 2019 (the "Petition Date"), the Debtors each commenced voluntary cases (the "Bankruptcy Cases") under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code").

3.      The Debtors have continued in possession of their properties and have continued to operate and manage their respective businesses as debtors-in-possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code.

4.      As of the date of this filing, no request has been made for the appointment of a trustee or examiner.

5.      Additional information about the Debtors' businesses and the events leading up to the commencement of the Bankruptcy Cases can be found in the Declaration of Ned Lidvall, Chief Executive Officer of the Debtors, in Support of Chapter 11 Petitions and First-Day Orders [Docket No. 5] (the "Lidvall Declaration"), which is incorporated herein by reference.

6.      On August 20, 2019, the Court entered a Final DIP Order in these Bankruptcy Cases [Docket No. 69] as amended by that certain Amended Final DIP Order [Docket No. 103] (the "Final DIP Order"), which, among other things, authorized the Debtors to use cash collateral and the proceeds of the Debtors' DIP loan from Origin Bank pursuant to a budget, which was attached to the DIP Financing Motion [Docket No. 16] as Exhibit C (the "Budget").

- 2 -

7.      On August 30, 2019, S.A.R. Associates, Inc. ("SAR") filed the Motion seeking entry of an order allowing it an administrative expense claim pursuant to Section 503(b)(9) of the Bankruptcy Code in the amount $65,514.00 (the "SAR Claim"), and directing the prompt payment of the SAR Claim.

8.      The Budget does not provide for the payment of the SAR Claim or any other Section 503(b)(9) administrative expense claim.

## OBJECTION

**A      SAR has Failed to Meet Its Burden of Proof to Establish the Necessary Elements of a Section 503(b)(9) Administrative Expense Claim.**

9.      Section 503(b)(9) of the Bankruptcy Code "'provides for the allowance of an administrative claim provided the claimant establishes: (1) the vendor sold "goods" to the debtor; (2) the goods were received by the debtor within twenty days prior to filing; and (3) the goods were sold to the debtor in the ordinary course of business.'" *In re PMC Mktg. Corp.*, 517 B.R. 386, 391 (B.A.P. 1st Cir. 2014) (quoting *In re NE Opco, Inc.,* 501 B.R. 233, 240–41 (Bankr. D. Del. 2013) (quoting *In re Goody's Family Clothing, Inc*., 401 B.R. 131, 133 (Bankr.D.Del.2009)).  An administrative expense claimant bears the burden of establishing that its claim qualifies for priority status. *Id*. (internal quotations and citation omitted).

### (i)      SAR has Not Shown and Cannot Show that it Sold Goods to the Debtors within 20 days of the Petition Date.

10.      SAR is not entitled to the requested administrative expense claim because the invoices attached the Motion are *not* for "goods" sold to the Debtors as required by Section 503(b)(9) of the Bankruptcy Code and applicable law.  For example, Exhibit A of the Motion reflects that $1,999.00 of the requested administrative expense claim is for "labor only." "It is well-settled that the statute does not provide priority status to claims for services rendered;

AGG\13977960v4

it refers only to 'the value of ... goods.'" *In re PMC Mktg. Corp.,* 517 B.R. at 391 (quoting *In re Erving Indus., Inc*., 432 B.R. 354, 361 (Bankr. D. Mass. 2010) (quoting 11 U.S.C. § 503(b)(9))); *see also In re NE Opco, Inc*., 501 B.R. at 241 ("An administrative priority claim under [§] 503(b)(9) is limited to the provision of goods.").

11.      The bankruptcy court for the District of Delaware has held that the administrative priority provided by Section 503(b)(9) is limited to *goods* received by the debtor in the twenty days preceding bankruptcy. *See In re Goody's Family Clothing, Inc.,* 401 B.R. at 134–135 (denying administrative expense status under § 503(b)(9) for services provided to the debtor within 20 days preceding the bankruptcy filing); s*ee  also In re NE Opco, Inc*., 501 B.R. at 258 (finding that where supplier provided goods and services to debtor, supplier only had claim under Section 503(b)(9) for the goods it provided).

12.      In *Goody's*, a case involving goods and services, a creditor performed certain services to goods which the apparel retailer debtor purchased from other vendors. *In re Goody's Family Clothing, Inc.,* 401 B.R. 131.  The creditor performed the services on the goods (such as packaging and ticketing clothing) and shipped the goods to the debtor within 20 days of the petition date.  *Id*. at 135.  The court sustained the debtor's objection to the creditor's Section 503(b)(9) claim.  *Id*.  The court held that although the services were performed on goods shipped to the debtor, the creditor sold services, and not goods, and Section 503(b)(9) only provides priority to goods "sold" to a debtor.  *Id*.  Here, SAR is a general contractor performing building and construction *services* to the Debtors for the construction of a restaurant.  Although SAR may have used certain goods (such as paint, lumber, shingles, doors, and windows) to render its services to the Debtors, the goods were supplied by subcontractors and vendors to the Debtors with SAR performing services on or with those goods (i.e. applying paint or

- 4 -

coordinating paint subcontractors that would apply the paint).   *See In re Modern Metal Prod.
Co*, No. BANKR. 08-73908, 2009 WL 2969762, at *3 (Bankr. N.D. Ill. Sept. 16, 2009)
(disallowing section 503(b)(9) claim of creditor that processed steel plates furnished by debtor
because creditor performed services on debtor's goods but did not sell the goods to the debtor).
Because SAR has failed to show that it sold *goods* to the Debtors within 20 days of the Petition
Date, the SAR Claim is not entitled administrative priority under Section 503(b)(9), and the
Motion should be denied.

> **(ii)     SAR did Not Sell Goods/Services to the Debtors in the
> Ordinary Course of the *Debtors'* Businesses.**

13.     SAR also is not entitled to the requested administrative expense claim because the
goods/services reflected in the invoices attached the Motion were *not* sold to the Debtors in the
"ordinary course of business" of the Debtors as required by Section 503(b)(9) of the Bankruptcy
Code and applicable law.   11 U.S.C. § 503(b)(9).   The case of *In re Magwood* illustrates this
point.   In that case the court, while addressing reclamation, found that a car dealer that sold a car
to a debtor who purchased the car for her own personal use, did not meet the requirements for an
administrative claim under § 503(b)(9) because the debtor was not in the business of buying
vehicles.   *See In re Magwood*, 2008 WL 509635, *1, No. 07-11288-DHW (Bankr. M.D. Ala.
Feb. 22, 2008).

14.     The Debtors are in the food service industry and operate several restaurants.
*See* Lidvall Declaration ¶¶ 11-13.   Thus, the types of goods that the Debtors purchase in the
ordinary course of their businesses are items such as food, alcohol, paper towels, cleaning
solutions, and linens.   Although the Debtors' parent, Eat Here Brands, LLC, does occasionally
develop and open new restaurants, none of the Debtors are in the construction industry.
Accordingly, the purchase of goods and services associated with construction of a restaurant is a

AGG\13977960v4

rare and extraordinary event and would not fall within the ordinary course of the

Debtors' businesses.

15.    Additionally, SAR is not even the type of vendor or supplier that

Section 503(b)(9) was intended to protect.  As Judge Diehl explained:

> Section 503(b)(9) was added to the Bankruptcy Code by the Bankruptcy Abuse
> Prevention and Consumer Protection Act of 2005 ("BAPCPA").
> …
> The treatment of expenses in § 503(b)(9) appears to be an outgrowth of the policy
> that first appeared in 11 U.S.C. § 546(c), which preserved the right of reclamation
> to certain sellers of goods on credit. BAPCPA included both the addition of §
> 503(b)(9) and the amendment of § 546(c). … While no legislative history exists,
> one can only surmise that these amendments reflect Congress' intent to better
> insure that ordinary course of business sellers of goods received by the debtor in
> the twenty days before the petition date gain priority in payment over most other
> creditors.

*In re TI Acquisition, LLC*, 410 B.R. 742, 745-46 (Bankr. N.D. Ga. 2009) (Diehl, J.)

(internal citations omitted) (noting that the amendments provided "protection to sellers of goods

on credit in the period immediately preceding the filing of a bankruptcy petition, regardless of

whether the technical requirements for reclamation were met").

16.    Because the goods/services that SAR provided to the Debtors were outside the

ordinary course of their businesses, the SAR Claim is not entitled administrative priority under

Section 503(b)(9), and the Motion should be denied.

**B.     The Court Should Deny SAR's Request for Immediate Payment of the
        SAR Claim.**

17.    Even if SAR were entitled to an administrative expense claim pursuant to Section

503(b)(9) of the Bankruptcy Code, which it is not, it is *not* entitled to the immediate payment of

such claim under applicable law.  It is well-established that "the timing of the payment of

administrative claims is within the discretion of the Court." *In re TI Acquisition, LLC*, 410 B.R.

at 751 (Bankr. N.D. Ga. 2009) (Diehl, J.) (citing *In re Colortex Indus.,* 19 F.3d 1371, 1384

- 6 -

(11th Cir.1994); *In re HQ Global Holdings, Inc.,* 282 B.R. 169, 173 (Bankr. D. Del. 2002); *see also* COLLIER ON BANKRUPTCY ¶ 503.3 at 503–13 (15th rev. ed.)); *see also In re NE Opco, Inc.,* 501 B.R. at 259. "In determining the time of payment, courts consider prejudice to the debtor, hardship to the claimant, and potential detriment to other creditors." *In re NE Opco, Inc.*, 501 B.R. at 259 (citation omitted). More particularly, "one of the chief factors courts consider is bankruptcy's goal of an orderly and equal distribution among creditors and the need to prevent a race to a debtor's assets." *Id.*

18.      The orderly treatment of Section 503(b)(9) claims is essential for the efficient administration of the Debtors' bankruptcy estates and a successful reorganization. The Debtors will have to determine the amount and validity of all administrative expense claims, including Section 503(b)(9) claims, in order to formulate a plan. Requiring the Debtors to pay such claims at this early stage would harm the Debtors because of the limited working capital that is available to them. Additionally, if the Court were to order the Debtors to pay the SAR Claim at this juncture, it is possible that the Debtors will receive requests from other parties that have not been paid for purported administrative expense obligations to date, which will distract the Debtors from the administration of these Bankruptcy Cases and their efforts to sell their assets for the benefit of all stakeholders. Moreover, pursuant to the Final DIP Order, the Debtors are only authorized to use the DIP Loan Amount[2] and the DIP Collateral (including Cash Collateral) for the purposes and amounts set forth in the DIP Loan Agreement and the Budget, which were both approved by the DIP Lender. The payment of the SAR Claim was *not* included in the Budget, and payment thereof would amount to use of Origin Bank's collateral without its consent. Accordingly, the immediate payment of the SAR Claim would significantly prejudice the

---

[2]      Capitalized terms used in this paragraph and not otherwise defined herein shall have the meanings given to them in the Final DIP Order.

AGG\13977960v4

Debtors and other creditors.[3]  In short, even if SAR were entitled to an administrative expense under Section 503(b)(9), which it is not, SAR is not entitled to immediate payment of the SAR Claim.

**RESERVATION OF RIGHTS**

19.   The Debtors reserve the right to address these and any other issues (including those raised by other parties-in-interest) at the Hearing on the Motion.

WHEREFORE the Debtors respectfully request that the Court sustain the Objection and deny the Motion, and grant the Debtors such other relief as is just and proper.

Respectfully submitted this 23rd day of September 2019.

ARNALL GOLDEN GREGORY LLP

/s/ Darryl S. Laddin
Darryl S. Laddin
Georgia Bar No. 460793
Sean C. Kulka
Georgia Bar No. 648919
171 17th Street, N.W., Suite 2100
Atlanta, Georgia 30363-1031
Phone: (404) 873-8500
Fax: (404) 873-8683
Email: darryl.laddin@agg.com
Email: sean.kulka@agg.com

*Attorneys for Debtors and Debtors in Possession*

---

[3]   Notably, while the Debtors are sympathetic to all unpaid claimants, SAR also has not shown that it is necessary to make immediate payment of the SAR Claim or that SAR would face a substantial hardship if the SAR Claim is not paid immediately.  *In re NE Opco, Inc*., 501 B.R. at 259 ("To qualify for exceptional immediate payment, a creditor must show that there is a necessity to pay and not merely that the Debtor has the ability to pay.").

AGG\13977960v4