## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| EAT HERE BRANDS, LLC, *et al.*[1], | ) | Lead Case No. 19-61688-WLH |
| | ) | |
| Debtors. | ) | Jointly Administered |
| | ) | |

## DEBTORS' MOTION TO DISMISS BANKRUPTCY CASES
## FOR CAUSE PURSUANT TO 11 U.S.C. § 1112(B) AND, IN CONNECTION
## THEREWITH, FOR AUTHORIZATION TO MAKE CERTAIN DISBURSEMENTS
## AND TO EXCUSE ESTATE PROFESSIONALS
## FROM THE REQUIREMENT OF FILING FEE APPLICATIONS

Eat Here Brands, LLC, Babalu Atlanta #1 LLC, Babalu Atlanta #2 LLC,
Babalu Knoxville #1 LLC, Babalu Memphis #1 LLC, Babalu Memphis #2 LLC, Babalu, LLC,
and Babalu Birmingham #1 LLC (collectively, the "Debtors"), debtors and debtors-in-possession
in the above-captioned bankruptcy cases, file *Debtors' Motion to Dismiss Bankruptcy Cases for
Cause Pursuant to 11 U.S.C. § 1112(b) and, in Connection Therewith, for Authorization to Make
Certain Disbursements and to Excuse Estate Professionals from the Requirement of Filing Fee
Applications* (the "Motion") pursuant to 11 U.S.C. § 1112(b) and applicable law, seeking entry
of an order substantially in the same form as **Exhibit A**: dismissing the Bankruptcy Cases
(defined below) for cause effective as of December 31, 2019, and, in connection therewith,
authorizing the Debtors to disburse their Remaining Cash (defined below) to Origin Bank and
various holders of administrative expense claims, and excusing estate professionals from the

---

[1]     The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax
identification number, are as follows:  Eat Here Brands, LLC (9694); Babalu Atlanta #1 LLC (4025); Babalu Atlanta
#2 LLC (5240); Babalu Knoxville #1 LLC (3163); Babalu Memphis #1 LLC (9320); Babalu Memphis #2 LLC
(4558); Babalu, LLC (7673); and Babalu Birmingham #1 LLC (1892).  The Debtors' mailing address is 9755
Dogwood Road, Suite 200, Roswell, Georgia 30075.

Case 19-61688-wlh    Doc 196    Filed 11/19/19    Entered 11/19/19 14:36:15    Desc Main
Document    Page 2 of 22

requirement of filing fee applications. In support of the Motion, the Debtors respectfully represent the following:

<h2 style="text-align:center">JURISDICTION AND VENUE</h2>

1.        This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) and (O). Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409(a).

<h2 style="text-align:center">BACKGROUND</h2>

**A.  General Background**

2.        On July 30, 2019 (the "Petition Date") the Debtors each commenced voluntary cases (the "Bankruptcy Cases") under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code").

3.        The Debtors have continued in possession of their properties and have continued to operate and manage their respective businesses as debtors-in-possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code.

4.        As of the date of this Motion, no request has been made for the appointment of a trustee or examiner.

5.        On August 21, 2019, the United States Trustee filed a Notice of Appointment of Committee [Docket No. 71] forming the Official Committee of Unsecured Creditors (the "Committee") in these Bankruptcy Cases.

6.        Additional information about the Debtors' businesses and the events leading up to the commencement of the Bankruptcy Cases can be found in the Declaration of Ned Lidvall, Chief Executive Officer of the Debtors, in Support of Chapter 11 Petitions and First-Day Orders [Docket No. 5] (the "Lidvall Declaration"), which is incorporated herein by reference.

14234566v6

**B.  DIP Financing**

7.      On August 20, 2019, the Court entered a Final DIP Order in these Bankruptcy Cases [Docket No. 69] as amended by that certain Amended Final DIP Order [Docket No. 103] (the "Final DIP Order"), which, among other things, authorized the Debtors to use cash collateral and the proceeds of a post-petition loan (the "DIP Loan") from Origin Bank pursuant to a budget, which was attached as Exhibit C (the "Budget") to the Debtors' DIP Financing Motion [Docket No. 16].

8.      Paragraph 16 of the Final DIP Order provides that it shall be a default under the DIP Order if the Debtors fail to: (i)  file a bidding procedures motion with or without a stalking horse on or before September 10, 2019**;** (ii) obtain entry of a bidding procedures order within twenty-four (24) days of Debtors' filing of the bidding procedures motion; (iii) obtain entry of an order approving the sale of all or substantially all of the Debtors' assets on or before October 18, 2019, or (iv) close a sale of all or substantially all of the Debtors' assets on or before October 27, 2019.  *See* Final DIP Order at ¶ 16.

9.      Paragraph 16 of the Final DIP Order also provides it shall be a default under the DIP Order unless on or before thirty (30) days after the date of closing of a sale of substantially all of their assets, and no later than December 1, 2019, the Debtors have not filed: (1) a motion to convert the Bankruptcy Cases to cases under Chapter 7 of the Bankruptcy Code, (2)  a motion to dismiss the Bankruptcy Cases, **or** (3) a plan of reorganization subject to Origin Bank's approval and consent providing for payment in full by December 31, 2019, of all amounts due to Origin Bank then remaining unpaid, including all amounts owed under the DIP Loan and the Debtors' pre-petition obligations to Origin Bank, with entry of a final order confirming such plan of reorganization on or before December 31, 2019.  *See* Final DIP Order at ¶ 16.

14234566v6

10.     As a condition of the DIP Loan, the Debtors have waived the ability to challenge the extent, validity, or priority of Origin Bank's claims and liens, and have further agreed that upon maturity or an event of default under the Final DIP Order, Origin Bank shall be entitled to relief from the automatic stay to exercise its rights and remedies under its loan agreements with the Debtors.  *See* Final DIP Order at ¶¶ G and 12(b).

11.     Paragraphs 26 and 27 of the Final DIP Order further provide parties in interest, including the Committee, with 90 days from the Petition Date (the "Challenge Deadline") to challenge the extent, validity, or priority of Origin Bank's claims and liens (a "Challenge Action"), and provide that any party in interest that fails to file a Challenge Action by the Challenge Deadline shall be forever barred from asserting a Challenge Action against Origin Bank.  *See* Final DIP Order at ¶¶ 26 and 27.

12.     No creditor or party in interest, including the Committee, filed a Challenge Action against Origin Bank by the Challenge Deadline.  Accordingly, it is undisputed that Origin Bank holds a first priority lien in all of the Debtors' assets (including the proceeds of the sales discussed below), except for Chapter 5 avoidance claims[2] and subject to the Carve-Out (as such term is defined in the Final DIP Order).  *See* Final DIP Order at ¶¶ 7-8, 10, and 14.

13.     On October 30, 2019, the Debtors filed a Stipulation Related to Subsequent Budget [Docket No. 188] (the "Budget Stipulation") wherein Origin Bank agreed to allow the Debtors pay certain additional administrative expenses out of its cash collateral pursuant to a budget attached to the Budget Stipulation as Exhibit A (the "Subsequent Budget").

---

[2]      Origin Bank maintains its lien on the DIP Collateral (as defined in the Final DIP Order), which includes Chapter 5 avoidance claims (but subject to marshalling), as security for the payment of Origin Bank's attorneys' fees as expenses, to the extent such fees and expenses are allowable under the DIP Loan Agreement, the Final DIP Order, and Section 506(b) of the Bankruptcy Code.  See Final DIP Order at ¶ 7; Budget Stipulation at ¶ 1. Additionally, Origin Bank maintains its lien in the DIP Collateral to the extent of diminution in value of Origin Bank's Pre-Petition Liens in accordance with the terms of the Final DIP Order.  See Final DIP Order at ¶ 10.

14234566v6

### C. Retention of Professionals and Related Administrative Expenses

14.     On July 30, 2019, the Debtors filed an Application [Docket No. 17] (the "Omni Application") to retain Omni Management Group, Inc. ("Omni") as their claims, noticing, and administrative agent in the Bankruptcy Cases.  On August 29, 2019, the Court entered an order approving the Omni Application [Docket No. 84].  As set forth in the Omni Application, Omni is currently holding a retainer in the amount of $5,000 (the "Omni Retainer").

15.     On July 30, 2019, the Debtors filed an Application [Docket No. 19] (the "AGG Application") to retain Arnall Golden Gregory LLP ("AGG") as their bankruptcy counsel in the Bankruptcy Cases.  On August 28, 2019, the Court entered an order approving the AGG Application [Docket No. 78].  As set forth in the AGG Application, AGG is currently holding a retainer in the amount of $93,640 (the "AGG Retainer").

16.     On July 30, 2019, the Debtors filed an Application [Docket No. 20] (the "GGG Application") to retain GGG Partners, LLC ("GGG") as their financial advisor in the Bankruptcy Cases.  On August 28, 2019, the Court entered an order approving the GGG Application [Docket No. 79].  As set forth in the GGG Application, GGG is currently holding a retainer in the amount of $58,670 (the "GGG Retainer").

17.     On August 1, 2019, the Debtors filed an Application [Docket No. 20] (the "SWTW Application") to retain Schulten Ward Turner & Weiss, LLP ("SWTW") as their conflicts counsel in the Bankruptcy Cases.  On August 28, 2019, the Court entered an order approving the SWTW Application [Docket No. 80].  As set forth in the SWTW Application, SWTW is currently holding a retainer in the amount of $5,675 (the "SWTW Retainer"; together with the Omni Retainer, the AGG Retainer, the GGG Retainer, and the SWTW Retainer, the "Retainers").

14234566v6

18.     On August 30, 2019, the Committee filed an Application [Docket No. 85] (the "S&W Application") to retain Scroggins & Williamson, P.C. ("S&W") as its attorneys in the Bankruptcy Cases.  On September 4, 2019, the Court entered an order approving the S&W Application [Docket No. 100] subject to objections.[3]

19.     As of the date of this Motion, pursuant to General Order No. 26-2019 governing Complex Chapter 11 Cases, which among other things, establishes interim compensation procedures for professionals in cases that are designated as complex Chapter 11 cases in this Court, including notice procedures for interim fee statements to certain parties (the "Interim Compensation Procedures"), and in accordance with the Budget, since the Petition Date the Debtors have paid: (i) Omni $21,015.22 in fees and expenses, (ii) AGG $281,734,73 in fees and expenses, (iii) GGG $222,916.16 in fees and expenses, (iv) SWTW $36,744.26 in fees and expenses, and (iv) S&W $22,500 in fees and expenses.

20.     The Debtors estimate that as of the date that the Court considers this Motion, without application of the Retainers, and after accounting for the payments previously made in accordance with the Interim Compensation Procedures, Final DIP Order, and the Budget, the Debtors will owe: (i) Omni approximately $20,000 in fees and expenses, (ii) AGG approximately $126,000 in fees and expenses, (iii) GGG approximately $50,000 in fees and expenses, (iv) SWTW approximately $15,000 in fees and expenses, and (iv) S&W approximately $7,000 in fees and expenses, representing total fees and expenses due to estate professionals of approximately $218,000 (the "Professional Fee Administrative Expense Claim").

21.     On October 8, 2019, the Debtors filed a Motion to Establish a Bar Date for Filing Proof of Claims in these Bankruptcy Cases [Docket No. 148], and on October 28, 2019, the

---

[3]     No creditor or party in interest filed an objection to the S&W Application.

Court entered an Order approving that motion [Docket No. 185], which established November 29, 2019 by 5:00 p.m. (Eastern) (the "Bar Date") as the last day for all creditors and interest holders to file proofs of claim in these Bankruptcy Cases, including claims under Section 503(b)(9) of the Bankruptcy Code.

22.     On October 8, 2019, the Debtors filed a Motion to Establish a Bar Date for Filing Requests for Administrative Expense Claims in these Bankruptcy Cases [Docket No. 149], and on October 28, 2019, the Court entered an Order approving that motion [Docket No. 184], which established November 29, 2019 by 5:00 p.m. (Eastern) (the "Administrative Expense Claim Bar Date") as the last day for all creditors and parties in interest, with certain limited exceptions (including an exception for estate professionals), to file a request for an administrative expense claims in these Bankruptcy Cases.

23.     Based on disbursements to date and the disbursements anticipated to be made if this Motion is granted, the Debtors anticipate that they will owe the Office of the United States Trustee $50,000 in fees for fourth quarter disbursements (the "UST Fees").

24.     As of the date of this Motion, no creditor or party in interest has filed a request for payment of an administrative expense in these Bankruptcy Cases.[4]  Therefore, other than the Professional Fee Administrative Expense Claim and the UST Fees, as of the date of this Motion, the Debtors are not aware of any material post-petition obligations to creditors or vendors, and anticipate that such expenses will not exceed the amounts for such categories set forth in the Budget and the Subsequent Budget.

---

[4]      S.A.R. Associates, Inc. filed a motion requesting the payment of an administrative expense claim, but later withdrew that motion. *See* Docket Nos. 86 and 193.

14234566v6

D.        **Sales of the Debtors' Assets and Disbursement of Sale Proceeds**

25.        On September 10, 2019, the Debtors filed a Bidding Procedures and Sale Motion [Docket No. 110] (the "Bidding Procedures Motion") seeking, among other things, entry of an order approving bidding procedures related to the sale of all or substantially all of the Debtors' assets free and clear of liens, claims, interest, and encumbrances, and to establish procedures for the assumption and assignment of various executory contracts and unexpired leases.

26.        On September 27, 2019, this Court entered an Order [Docket No. 135] (the "Bid Procedures Order"), which, among other things, approved the bid procedures relief requested in the Bidding Procedures Motion.

27.        As set forth in the Bidding Procedures Motion, the Debtors negotiated a proposed transaction with Balu Holdings, LLC (the "Stalking Horse Bidder"), wherein the Stalking Horse Bidder agreed to purchase substantially all of the Debtors' assets, subject to Court approval and higher and better bids, pursuant to an Asset Purchase Agreement, dated September 9, 2019, by and among the Stalking Horse Bidder and certain of the Debtors (the "Stalking Horse APA").

28.        Pursuant to the Bidding Procedures Order, Eat Here Brands, LLC and Babalu Atlanta #2 LLC entered into an Asset Purchase Agreement with CPVR Mid-Continent, LLC dated as of October 10, 2019, related to certain assets that were not being purchased under the Stalking Horse APA (the "APA").

29.        On October 18, 2019, the Court entered a Sale Order approving the proposed sale outlined in the Stalking Horse APA [Docket Nos. 169] (the "Sale Order"), and a second Sale Order approving the proposed sale outlined in the APA [Docket No. 170] (the "Atlanta #2 Sale Order").

14234566v6

30.     On October 24, 2019, the Debtors closed the sale of the Debtors' assets identified

in the Stalking Horse APA (the "Sale") and transferred those assets to the Stalking Horse Bidder,

generating gross cash sale proceeds totaling $3,655,949.96.  On October 25, 2019, the Debtors

closed the sale of the Debtors' assets identified in the APA (the "Atlanta #2 Sale") and

transferred those assets to CPVR Mid-Continent, LLC, generating gross cash sale proceeds

totaling $31,000. The total net sale proceeds from the two sales were $3,608,676.28.

31.     Paragraph 14 of the Sale Order provides:

> Unless previously paid in full in accordance with the Budget[5] or the consent of
> Origin Bank, (i) the Debtors shall segregate from the proceeds of the sale at
> Closing the remaining amount necessary pay all PACA claimants the amounts set
> forth in the PACA Notice[6] in full, and (ii) within five (5) business days of
> Closing, the Debtors shall pay each such PACA claimant, from such proceeds of
> the Sale, the amount necessary to pay such PACA claimant in full the amount set
> forth for it in the PACA Notice.

In accordance with the Final DIP Order and this provision of the Sale Order, on October 24,

2019, the Debtors disbursed $160,685.37 to the holders of the PACA claims set forth in the

PACA Notice, with $46,596.37 of such amount being paid from the proceeds of the Sale.

32.     Paragraph 15 of the Sale Order further provides:

> Within five (5) business days of Closing, the Debtors shall pay origin Bank the
> amount necessary to repay the DIP Loan Obligation in full.  Within two (2)
> business days after the later of the Closing and the expiration of the Challenge
> Period (as such term is defined in the Final DIP Order), the Debtors shall pay all
> of the remaining proceeds of the Sale toward the satisfaction of the Pre-Petition
> Obligations (as defined in the Final DIP Order) *less* (1) the payments to PACA
> claimants set forth in the preceding paragraph, (2) the payment of the DIP Loan
> Obligation in (i) of this paragraph, (3) an amount equal to all unpaid
> administrative expenses set forth in the Budget (but only to the extent that the
> Debtors have insufficient cash on hand to pay such expenses, and *not* to exceed

---

[5]     The Budget provides for the payment of $121,589 in PACA claims.

[6]     Pursuant to the Court's PACA Order [Docket No. 123], on October 14, 2019, the Debtors filed a PACA
Notice [Docket No. 159] (the "PACA Notice"), which identified PACA claims totaling $160,685.37.  Pursuant to
paragraph 6 of the PACA Order, and by virtue of the PACA Notice, Origin Bank and the Committee had three days
from the date of the PACA Notice to object to the PACA claim amounts set forth in the PACA Notice.  Neither
Origin Bank nor the Committee filed a timely objection to the amounts set forth in the PACA Notice.

- 9 -

$200,000), and (4) $500,000.  Any remaining funds not disbursed in accordance with this Order shall be held by Debtors and shall only be disbursed in accordance with a Subsequent Budget (as such term is defined in the Final DIP Order) or pursuant to a plan or further order of the Court.

In accordance with the Sale Order, on October 24, 2019, the Debtors disbursed $1,207,991.04 to Origin Bank from the proceeds of the Sale, which paid the principal balance and all accrued interest due under the DIP Loan.[7]  On October 29, 2019, the Debtors disbursed another $1,614,653.87[8] to Origin Bank from the proceeds of the Sale.

33.    After making the disbursements to Origin Bank that were authorized under the Sale Order and the Atlanta #2 Sale Order, and after paying budgeted administrative expenses, as of November 18, 2019, the Debtors currently have $663,216.11 (an amount totaling $163,216.11 in two accounts and an amount totaling $500,000 in another account) in proceeds of the Sale (the "Remaining Cash").  Pursuant to the Final DIP Order, the Budget and the Subsequent Budget, the Debtors are currently authorized to spend up to an additional $402,966.11 of the Remaining Cash to pay various administrative expenses (including professional fees) identified in the Budget and the Subsequent Budget.

## REQUEST AND BASIS FOR RELIEF

### A.  Dismissal of these Bankruptcy Cases is in the Best Interests Creditors and the Bankruptcy Estates

34.    A Chapter 11 bankruptcy case may be dismissed or converted under Section 1112(b) of the Bankruptcy Code for "cause" on a motion of a party in interest. Section 1112(b)(1) of the Bankruptcy Code, provides in relevant part:

---

[7]    Origin Bank maintains that notwithstanding this payment it may be entitled to post-petition attorneys' fees under the DIP Loan.

[8]    Of this amount $31,000 comes from proceeds from the Atlanta #2 Sale.  Paragraph 14 of the Atlanta #2 Sale Order provides "[w]ithin five (5) business days of Closing, the Debtors shall transfer all of the proceeds of the Sale of the Acquired Assets to Origin Bank toward the satisfaction of the Pre-Petition Obligations (as defined in the Final DIP Order)."  In accordance with this provision of the Atlanta #2 Sale Order, on October 29, 2019, the Debtors disbursed $31,000 to Origin Bank.

14234566v6

> Except as provided in paragraph (2) and subsection (c), on request of a party in interest, and after notice and a hearing, the court *shall* convert a case under this chapter to a case under chapter 7 of this title *or dismiss* a case under this chapter, whichever is in the best interest of creditors and the estate, for *cause unless* the court determines that appointment under section 1104(a) of a trustee or an examiner is in the best interests of creditors and the estate.

11 U.S.C. § 1112(b)(1) (emphasis added).

35.    Section 1112(b)(4) of the Bankruptcy Code enumerates a *non-exhaustive* list of what constitutes cause under Section 1112(b).    *See In re Trumbull Memorial Hospital Foundation*, 444 B.R. 848, 855-56 (Bankr. N.D. Ohio 2011) ("Although the list of cause in § 1112(b)(4) includes sixteen examples, such list is non-exhaustive," and noting that Section 1112(b)(4) provides a list of "examples of cause that a party *other than a debtor* would usually cite as grounds for dismissal.") (emphasis added); *see also In re Products Int'l Co.*, 395 B.R. 101, 109-10 (Bankr. D. Ariz. 2008) (reasoning that BAPCPA's insertion of word "and" for the word "or" in Section 1112(b)(4) appears to be a scrivener's error, and holding that "[t]his Court concludes that the items listed in Subsection (b)(4), under the term 'cause,' are not exhaustive and shall read the list in the disjunctive, utilizing the term 'or,' rather than 'and,' in considering whether cause has been shown.").

36.    Although Section 1112(b) is generally utilized by creditors, "[n]othing in § 1112(b) prohibits a debtor from moving for dismissal of its own case." *See Trumbull*, 444 B.R. at 855 (reasoning debtor in possession is a party in interest for purposes of Section 1112(b)); *In re Manawa Implement & Service, Inc.*, 1988 WL 1571426, *2 (Bankr. S.D. Iowa 1988) ("In the case at bar, cause exits to dismiss because Debtor has made substantial accommodations with all creditors and is now back to financial success. Further, it is in the best interests of creditors to dismiss the case and let Debtor move forward in order to begin paying back its debts."). However, the Supreme Court has warned that it is impermissible for the

- 11 -

bankruptcy court to approve a structured dismissal of a Chapter 1l case when doing so would allow a debtor to make distributions in contravention of the priority scheme of the Bankruptcy Code without the consent of the impacted creditors.  *See Czyzewski v. Jevic Holding Corp.*, 137 S. Ct. 973, 983 (2017).

37.    The Debtors do not have sufficient assets to fund a Chapter 11 plan that would repay Origin Bank's pre-petition first priority secured claims in full.  Accordingly, the Debtors cannot fund a Chapter 11 plan in these Bankruptcy Cases without triggering a default under the Final DIP Order.  Additionally, the Debtors' cannot realistically confirm a Chapter 11 plan over Origin Bank's objection.  Further, upon a default under the Final DIP Order, Origin Bank would be entitled to relief from the automatic stay to exercise all of its rights and remedies with respect to its collateral, including cash collateral.  Accordingly, the Debtors do not have a realistic prospect of presenting, much less confirming, a Chapter 11 plan in these Bankruptcy Cases.

38.    Moreover, given the fact that Origin Bank holds an undisputed first priority lien (subject only to the Carve-Out) in all of the Debtors' assets (other than Chapter 5 claims and claims against the Debtors' officers and directors), the possibility of unpaid administrative expense claims under section 503(b)(9) of the Bankruptcy Code or other priority claims, and the lack of available funding to thoroughly investigate or pursue potential avoidance actions or claims against officers and directors, it appears unlikely that either the Debtors, a Chapter 7 trustee or a liquidating agent under a Chapter 11 plan would be able to generate sufficient revenue in excess of their own professional fees and expenses to make a meaningful distribution to pre-petition unsecured creditors consistent with the priority scheme of the Bankruptcy Code.[9] In the same vein, Committee counsel has conducted a limited review of potential avoidance

---

[9]      Even if there were a distribution to unsecured creditors, Origin Bank itself would be the largest single beneficiary of any recovery for unsecured creditors because of the size of its deficiency claim.

action claims, potential claims against the Debtors' officers and directors, and relevant caselaw involving, among other things, standing to bring claims against the officers and directors of a Delaware limited liability company (such as Eat Here Brands, LLC), and has represented to Debtors' counsel that the Committee does not intend to seek standing to pursue those claims, and that the Committee does *not* oppose the dismissal of these Bankruptcy Cases or the other relief requested in this Motion.

39.     Further, Origin Bank has represented in open court that it opposes conversion, and it would be inequitable to Origin Bank if the Court were to convert these Bankruptcy Cases to Chapter 7 cases, and therefore potentially subject Origin Bank to delay and an unnecessary Chapter 7 trustee commission.

40.     Finally, the amounts identified in the Budget and the Subsequent Budget should provide the Debtors with sufficient cash flow to promptly pay their anticipated administrative expenses, including U.S. Trustee fees and most professional fees – many of which likely would *not* be paid if the Bankruptcy Cases were converted to Chapter 7 cases.[10]   The remaining payments under the Budget and the Subsequent Budget are being made out of Origin Bank's collateral to pay post-petition administrative expenses, and not junior claims.  Accordingly, the Debtors are not seeking to pay any creditors in contravention of the priority scheme of the Bankruptcy Code, and the proposed dismissal does not violate the Supreme Court's decision in *Czyzewski v. Jevic Holding Corp.*, 137 S. Ct. 973 (2017).  Thus, for all of the foregoing reasons, the Debtors respectfully submit that "cause" exists to dismiss these Bankruptcy Cases under

---

[10]     It will be necessary for certain estate professionals to apply the Retainers to pay certain outstanding fees and expenses that exceed the amounts allocated for those expenses in the Budget and the Subsequent Budget. Counsel for the Committee does not have such a retainer.

14234566v6

Section 1112(b) and applicable law, and that the proposed dismissal is in the best interests of the Debtors' bankruptcy estates and their creditors.

### B. The Requested Disbursements are Appropriate.

41.     As set forth herein, Origin Bank has an undisputed first priority lien in all of the Debtors' assets, except for Chapter 5 avoidance claims[11] and subject to the Carve-Out.  Origin Bank has consented to the use of its cash collateral to pay the administrative expenses set forth in the Budget and the Subsequent Budget.  The Debtors have already made the disbursements to Origin Bank required under the Sale Order and the Atlanta #2 Sale Order, and have retained the Remaining Cash subject to the Budget, Subsequent Budget, and further order of the Court. The Debtors are not aware of any claims that are senior to the administrative expenses set forth in the Budget and the Subsequent Budget.[12]  Accordingly, the Debtors respectfully submit that the disbursements set forth in **Exhibit A** are appropriate, consistent with the priority scheme of the Bankruptcy Code, and should be approved by this Court.  These disbursements include additional payments of administrative expenses provided for under the Budget, as well as payments to Origin Bank, the Office of the United Trustee for UST Fees, and professionals that are estimated to be as follows:  (i) $260,250 to Origin Bank, (ii) $50,000 for the UST Fees; (iii) $15,500 to Omni; (iv) $60,000 to AGG and/or SWTW; (v) $27,500 to GGG, and (vi) $2,500 to S&W.[13]  The Debtors also seek authority to allow each respective estate professional to apply the Retainers to outstanding fees and expenses of that professional in the amounts set forth herein.

---

[11]        *See*, *supra*, n. 2.

[12]        Sales and use taxes are included in the Budget.

[13]        That amounts identified in this paragraph for professionals are the amounts set forth in the Subsequent Budget, and assume that professionals have been paid all amounts allocated in the Budget.

14234566v6

### C. It is Appropriate to Excuse Estate Professionals from Filing Fee Applications Under the Circumstances of these Bankruptcy Cases.

42.     As set forth above, estate professionals have already complied with the Interim Compensation Procedures as to all payments for fees and expenses received to date.  Requiring estate professionals to file fee applications to validate the payment of those fees and expenses as well as any remaining unpaid fees and expenses will be time consuming and very expensive. Further, all professional fees in these Bankruptcy Cases have been paid out of the Carve-Out from Origin Bank's collateral.  Thus, to the extent that the Court or any other party in interest were to find an issue with any aspect of an estate professional's fees and expenses, the disallowance of such fees or expenses would inure to the benefit of Origin Bank, and *not* the Debtors or their unsecured creditors.  Based on the professional and efficient manner in which these Bankruptcy Cases have been administered to date, Origin Bank has agreed that it is appropriate to forego this layer of oversight, and counsel for Origin Bank has represented to Debtors' counsel that Origin Bank does not oppose the Debtors' request to excuse estate professionals from filing fee applications.  Accordingly, the Debtors respectfully request that the Court excuse all estate professionals from filing fee applications in these Bankruptcy Cases.

### NOTICE

43.     Notice of this Motion will be provided to (a) the parties on the Master Service List as approved by this Court's Order Establishing Notice and Administrative Procedures [Docket No. 33], and (b) all creditors and parties in interest on the creditor matrix in each of the Debtors' respective Bankruptcy Cases.  In light of the nature of the relief requested in the Motion, the Debtors submit that no further notice is necessary.

WHEREFORE, the Debtors respectfully request that this Court enter an order substantially in the same form as **Exhibit A**: (i) authorizing the Debtors to make the

14234566v6

disbursements from the Remaining Cash as estimated and set forth in such proposed Order, (ii) excusing estate professionals from the requirement of filing fee applications, (iii) dismissing the Bankruptcy Cases, and (iii) granting the Debtors such other and further relief as is just and proper.

Respectfully submitted this 19th day of November 2019.

ARNALL GOLDEN GREGORY LLP

*/s/ Darryl S. Laddin*
Darryl S. Laddin
Georgia Bar No. 460793
Sean C. Kulka
Georgia Bar No. 648919
171 17th Street, N.W., Suite 2100
Atlanta, Georgia 30363-1031
Phone: (404) 873-8500
Fax: (404) 873-8683
Email: darryl.laddin@agg.com
Email: sean.kulka@agg.com

*Attorneys for Debtors and Debtors in Possession*

14234566v6

**EXHIBIT A**

**PROPOSED ORDER**

14234566v6

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| EAT HERE BRANDS, LLC, *et al.*[1], | ) | Lead Case No. 19-61688-WLH |
|  | ) |  |
| Debtors. | ) | Jointly Administered |
|  | ) |  |

**ORDER APPROVING DEBTORS' MOTION TO DISMISS BANKRUPTCY CASES**
**FOR CAUSE PURSUANT TO 11 U.S.C. § 1112(B) AND, IN CONNECTION**
**THEREWITH, FOR AUTHORIZATION TO MAKE CERTAIN DISBURSEMENTS**
**AND TO EXCUSE ESTATE PROFESSIONALS**
**<u>FROM THE REQUIREMENT OF FILING FEE APPLICATIONS</u>**

This matter is before the Court on *Debtors' Motion to Dismiss Bankruptcy Cases for*

*Cause Pursuant to 11 U.S.C. § 1112(b) and, in Connection Therewith, for Authorization to Make*

*Certain Disbursements and to Excuse Estate Professionals from the Requirement of Filing Fee*

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Eat Here Brands, LLC (9694); Babalu Atlanta #1 LLC (4025); Babalu Atlanta #2 LLC (5240); Babalu Knoxville #1 LLC (3163); Babalu Memphis #1 LLC (9320); Babalu Memphis #2 LLC (4558); Babalu, LLC (7673); and Babalu Birmingham #1 LLC (1892). The Debtors' mailing address is 9755 Dogwood Road, Suite 200, Roswell, Georgia 30075.

*Applications* [Docket No.__] (the "Motion")[2] filed by Eat Here Brands, LLC, Babalu Atlanta #1

LLC, Babalu Atlanta #1 LLC, Babalu Knoxville #1 LLC, Babalu Memphis #1 LLC, Babalu

Memphis #2 LLC, Babalu, LLC, and Babalu Birmingham #1 LLC (collectively, the "Debtors").

The Court has considered the Motion and the entire record in these Bankruptcy Cases.

It appears that the Court has jurisdiction over the Motion and this proceeding; that this is a core

proceeding; that notice of the Motion has been given to the parties on the Master Service List as

approved by this Court's Order Establishing Notice and Administrative Procedures

[Docket No. 33] and all creditors identified in the creditor matrix of each of the Debtors'

respective Bankruptcy Cases; that no further notice of the Motion is necessary; that the relief

sought in the Motion is in the best interests of the Debtors, their bankruptcy estates, and their

creditors; and that good and sufficient cause exists for such relief.

Accordingly, it is hereby ORDERED as follows:

1.        The Motion is GRANTED as set forth herein.

2.        The Debtors are authorized and directed to make the following disbursements

from the Remaining Cash within two (2) business days of the entry of this Order:

(a) $260,250 to Origin Bank;

(b) $50,000 to the United States Trustee for the UST Fees;

(c) $15,500 to Omni, but only to the extent that there are sufficient funds allocated in the
    Budget and the Subsequent Budget to pay such amount;

(d) $60,000 to AGG and/or SWTW, but only to the extent that there are sufficient funds
    allocated in the Budget and the Subsequent Budget to pay such amount;

(e) $27,500 to GGG, but only to the extent that there are sufficient funds allocated in the
    Budget and the Subsequent Budget to pay such amount; and

---

[2]        Any capitalized terms not defined in this Order shall have the meaning given to them in the Motion.

14234566v6

(f) $2,500 to S&W, but only to the extent that there are sufficient funds allocated in the Budget and the Subsequent Budget to pay such amount.

3.        The Debtors are authorized to disburse any of the Remaining Cash that is not disbursed pursuant to paragraph 2 of this Order to pay any other post-petition obligations to creditors or vendors, including professionals, but only to the extent that such obligations were incurred in the ordinary course of business of the Debtors, and only to the extent that there are sufficient funds allocated in the Budget and the Subsequent Budget to pay such obligations (or upon express consent of Origin Bank to the extent any incurred post-petition obligations are not allocated in the Budget or the Subsequent Budget).

4.        Any Remaining Cash that is not disbursed pursuant to paragraphs 2 and 3 of this Order shall be retained by the Debtors and may be utilized by the Debtors to dissolve the Debtors and otherwise unwind their affairs pursuant to applicable non-bankruptcy law, but only to the extent that there are sufficient funds allocated in the Subsequent Budget to pay such obligations.   Any Remaining Cash not utilized in accordance with this paragraph shall be disbursed to Origin Bank no later than five (5) business days of the formal dissolution of each of the Debtors.

5.        To the extent that there are insufficient funds allocated in the Budget and the Subsequent Budget to make the disbursement to Omni that is authorized and directed under paragraph 2 of this Order, Omni is authorized to apply the Omni Retainer to satisfy any such unpaid amount.

6.        To the extent that there are insufficient funds allocated in the Budget and the Subsequent Budget to make the disbursement to AGG that is authorized and directed under paragraph 2 of this Order, AGG is authorized to apply the AGG Retainer to satisfy any such unpaid amount.

14234566v6

7.          To the extent that there are insufficient funds allocated in the Budget and the Subsequent Budget to make the disbursement to GGG that is authorized and directed under paragraph 2 of this Order, GGG is authorized to apply the GGG Retainer to satisfy any such unpaid amount.

8.          To the extent that there are insufficient funds allocated in the Budget and the Subsequent Budget to make the disbursement to SWTW that is authorized and directed under paragraph 2 of this Order, SWTW is authorized to apply the SWTW Retainer to satisfy any such unpaid amount.

9.          The Debtors and their professionals are excused from filing fee applications in these Bankruptcy Cases.

10.          The Committee and its professionals are excused from filing fee applications in these Bankruptcy Cases.

11.          Pursuant to 11 U.S.C. § 1112(b) and applicable law, the Bankruptcy Cases are dismissed effective December 31, 2019.

12.          The Court shall retain jurisdiction to hear and determine all matters arising from the implementation of this Order.

13.          Counsel for the Debtors is directed to serve or cause a copy of this Order to be served on: (i) all parties on the Master Service List as approved by this Court's Order Establishing Notice and Administrative Procedures [Docket No. 33] and (ii) all creditors identified in the creditor matrix of each of the Debtor's Bankruptcy Cases, within three (3) days of the entry of this Order and file a certificate of service with the Clerk of the Court.

**\*\*\* END OF ORDER \*\*\***

14234566v6

Prepared and presented by:

ARNALL GOLDEN GREGORY LLP

*/s/ Darryl S. Laddin*
Darryl S. Laddin
Georgia Bar No. 460793
Sean C. Kulka
Georgia Bar No. 648919
171 17th Street, N.W., Suite 2100
Atlanta, Georgia 30363-1031
Phone: (404) 873-8500
Fax: (404) 873-8683
Email: darryl.laddin@agg.com
Email: sean.kulka@agg.com

*Attorneys for Debtors and Debtors in Possession*